SEWARD v. GARNER et al.—89 S. W. (2d) 770.

Middle Section.    March 30, 1935.

Petition of Certiorari denied by Supreme Court, January 25, 1936.

R. E. Haynes, of Franklin, for appellants Garner and others.
R. H. Crockett, of Franklin, for appellee Mrs. Seward.

CROWNOVER, J. This was a suit to enforce a landlord's lien upon the crop grown on the land in payment of rent.

Attachment was issued and levied on approximately fifty barrels of corn, and the sheriff took possession of same.

Mrs. Rosa R. Seward owns a farm of about 150 acres in Williamson county, on which there is a residence, barns, pasture, and farming lands.

On January 7, 1932, she leased the same, by written lease, to J. F. Garner for the year 1932. . It was agreed that the rent for the house, outbuildings, garden, and pasture should be $150, for which Garner executed two notes, one for $75, due July 1, 1932, and one for $75, due November 15, 1932. The tilled land, not included in the foregoing, was to be farmed upon share cropping basis, crops to be divided one-half to the landlord and one-half to the tenant, except tobacco, of which the landlord should be entitled to one-third and the tenant two-thirds.

Garner occupied and cultivated this farm, under the terms of this lease, during the year 1932, made the division of crops called for, and paid the note for $75 maturing July 1, 1932, and made payments on the note maturing November 15, 1932. There is now due on this last note, after crediting payments and adding interest, $23.95.

At the expiration of the lease, Garner remained on this farm for another year. The terms of this lease for the year 1933 is the principal matter in dispute in this suit. The lease was in parol, and the only witnesses to same were Dr. Seward, agent for and son of Mrs. Rosa R. Seward, and J. F. Garner and his wife.

Dr. Seward is a physician with offices in Nashville.

Dr Seward testified that in the summer of 1932 Garner came to his office to discuss a lease for 1933; that Garner stated that he was unwilling to make the cash payment of $150 a year for the pasture land, as pasture land had not been profitable; that he told Garner that he would not consider a lease on any other terms; and suggested to Garner that he undertake to find a farm that would suit him better, and, if he could not find one, that he confer with him again; that some time later, but before September 1, 1932, he went to see Garner at this farm and had a conference with him and his wife; that he asked Garner if he had found a farm that suited him, and he said he had not; that they then talked further

about renewing the lease. Seward said that he suggested to Garner that he might pasture sheep, and they discussed the matter; that Garner stated that the pasture fence was in bad repair, and he (Seward) agreed to furnish wire and posts, if needed; that the matter of renewing the lease was then discussed, and Garner stated that, since it would cost him $100 to move, he would rather renew the old lease and try to get sheep to keep on the pasture; that he stated to Garner- that, as the terms of the lease were the same, it would not be necessary to execute a new lease and new notes, but the old contract would be renewed with payments of $75 on July 1, 1933, and November 15, 1933, to which Garner agreed.

Dr. Seward denied that he had agreed to furnish sheep or to raise sheep with Garner on shares, and stated that Garner never called upon him to furnish sheep or wire for the pasture fence. He testified that late in the year 1933 Garner told him that he did not intend to make the cash payment and denied that he and Seward had made a contract that he should pay same.

Garner and Mrs. Garner testified that at the conference with Seward at the farm, Seward agreed that, if defendant Garner would renew the contract for the year 1933, he (Seward) would furnish Garner thirty good ewes to run on the pasture and would also supply the necessary wire and posts to repair the fence; that he (Garner) agreed to this contract provided the ewes and the wire and posts would be furnished; that the same were never furnished.

Mrs. Seward filed her original bill in this cause to collect $177.95 rent for 1932 and 1933, and asked for attachment of seventy-five barrels of corn grown on said land in 1933.

Attachment was issued and levied on approximately fifty barrels of corn in Garner's crib on the German-McEwen farm to which he had moved.

In the year 1933 Garner had raised one hundred barrels of corn on the Seward farm. Half of it, or fifty barrels, was delivered to Mrs. Seward under the rental contract. The other fifty barrels, which belonged to Garner, was fed to his hogs, he says, with the exception of seven or eight barrels, before the filing of this bill on February 3, 1934. When he moved from the Seward farm to the German-McEwen farm he moved this seven or eight barrels of corn and put it in one end of the crib.

For the year 1933 Garner had also rented another place, known as the "Mrs. Rosa Kate Thompson place." He says he turned this place over to his sons, who raised a crop of corn on it. When the corn was gathered they put it in the same crib on the Seward place where their father's corn was stored.

The boys testified that they put their corn in one end of the crib and their father kept his corn in the other end; that, when they

all moved to the German-McEwen farm, the corn was also moved, and their corn put in one end of the crib on that place and their father's corn in the other end. They filed a petition in this cause, and insist that the attachment in this case was levied on their corn.

The chancellor heard the case on oral evidence under a written agreement, as provided by Acts 1917, c. 119 (Code, sec. 10564), and found:

"(1) J. F. Garner is indebted to Mrs. Rosa R. Seward for rent for the year 1932, under the contract exhibited, in the amount of Twenty Dollars ($20.00), but no lien therefore can attach to the crop for the year 1933.

"(2) J. F. Garner is likewise indebted to Mrs. Seward in the amount of $153.95, rent for 1933, under the original contract, which a preponderance of the proof shows to have been renewed for the year 1933, Mrs. Seward is entitled to the statutory lien for this amount upon the corn crop heretofore attached.

"(3) The contention of defendant that the contract of 1932 was modified and changed for the year 1933 is not sustained by the proof.

"(4) The contention of petitioners, Clyde, Pat and Thomas Garner as to their ownership of the corn in question, is not sustained by the proof. Furthermore, even though they had raised the corn and it belonged to them, they permitted it to be so mixed and mingled with complainant's corn as to render identification and segregation impossible."

Decree was entered that Mrs. Seward recover of J. F. Garner the sum of $20 on account of balance due on note for rent for the year 1932, and $153.95 for rent for the year 1933, and that the corn should be sold in satisfaction of the second item.

Thereupon it was agreed between the parties that the value of the corn attached was $100, and that this amount might be paid into court and the corn released, which has been done.

Defendant J. F. Garner and petitioners Clyde Garner et al. excepted to the chancellor's decree and appealed to this court.

Motion for a new trial was filed after oath for appeal was filed and overruled by the court, to which action defendants excepted.

Appellants assigned errors, which are, in substance, as follows:

(1) The chancellor erred in holding and decreeing that Garner owes Mrs. Seward $20 on the note due November 15, 1932.

(2) The chancellor erred in finding and decreeing that the original contract was renewed for 1933 and that Garner owes Mrs. Seward $153.95 rent for 1933.

(3) The chancellor erred in finding and holding that the contention of Clyde, Pat, and Thomas Garner that they were the owners of the corn attached, was not sustained by the proof.

(4) The chancellor erred in excluding the testimony of Pat Garner.

(5) The chancellor erred in excluding the testimony of Guy Ferrell.

The two last errors seemed to have been abandoned on appeal, as they were not argued. McDonnell v. Amo, 162 Tenn., 36, 34 S. W. (2d), 212; State ex rel. v. Retail Creditmen's Association, 163 Tenn., 450, 43 S. W. (2d), 918.

There are three matters in dispute in this cause: (1) Did Garner lease the farm for 1933 on the same terms as the written lease of 1932? (2) Did Garner owe a balance of $20 on the note of November 15, 1932? (3) Did the corn which was attached belong to Garner or his sons?

1. The Garner family testified on one side and Dr. Seward on the other. Where the case is tried by the chancellor on oral evidence, great weight should be given to his decision. Fonville v. Gregory, 162 Tenn., 294, 296, 36 S. W. (2d), 900; Trice v. McGill, 158 Tenn., 394, 13 S. W. (2d), 49; Willis & Turner v. Moore & Davis, 151 Tenn., 562, 271 S. W., 736; Beatty v. Schenck, 127 Tenn., 63, 65, 152 S. W., 1033.

Complainant contends that the lease of 1932 was renewed verbally for 1933. Garner's testimony is that he agreed to rent the place for 1933 on the same terms as the written lease of 1932 on condition that Dr. Seward would furnish him thirty ewes and wire and posts for pasture fence. Dr. Seward denies that he agreed to furnish sheep, and states that he agreed to furnish wire and posts, but was never called on for either.

It is not shown how much damage, if any, was suffered by Garner for the failure to furnish sheep to pasture and the wire for the fence.

The burden of proving a modification of the contract and the damages for breach of contract was upon Garner.

"The party asserting the modification of a contract has the burden of proof; he must for example show the assent of the other party or parties, and the minds of the parties must be shown to have met on a definite modification. So an oral contract superseding and altering a written contract, . . . must be proved by the party relying on it." 13 C. J., 762, sec. 950.

If a tenant holds over with the consent or acquiescence of the landlord and without a new agreement, he becomes a tenant from year to year. 35 C. J., 1101, sec. 295.

"The creation of a tenancy from year to year by implication from holding over with consent and acquiescence of the landlord may be rebutted by showing that the holding over is in some other character or for some other purpose, but proof of a contrary intention

on the part of the tenant alone is not sufficient for this purpose.''
35 C. J., 1104, sec. 299.

We think the proof fails to show that the old agreement was modified or that Dr. Seward agreed to furnish the sheep for pasture; hence this assignment is overruled.

2. As to the note due November 15, 1932, defendant contends that there is only 50 cents due. Dr. Seward states that $20 is due; that the items that Garner contends should be credited on the note were adjusted in other settlements and otherwise accounted for. We think the chancellor was correct in holding there was $20 still due, and this assignment is overruled.

3. The evidence shows that J. F. Garner rented the Thompson place; that his three sons, who lived with him, two of them under 21 years of age, cultivated it, using their father's work stock and tools, and being assisted by their father, and raised a crop of corn, which was placed in the crib with their father's corn; that no effort was made to keep this corn separate from their father's crop, except that their corn was thrown in one end of the crib and their father's corn in the other. The size of the corncrib is not shown. It is insisted that their father's corn was used first to feed the stock, and had all been used except seven or eight barrels. It is further shown that, when Garner moved to the German-McEwen farm, all the corn was moved and put in the same crib. All this shows that the sons' claim to the corn is an afterthought, and we think the chancellor was correct in his conclusion.

Complainant contends that the decree of the chancellor should be affirmed because there was no motion for a new trial filed within the proper time. No motion for a new trial was necessary under the holding of the Supreme Court in the case of Mutual Life Insurance Company v. Annie J. Burton, 167 Tenn., 606, 72 S. W. (2d), 778, and other cases since decided. Also it appears from the record that a motion for a new trial was filed immediately after the filing of the chancellor's finding of facts; hence there is nothing in this contention.

It results that the assignments of errors are overruled and the decree of the chancellor is affirmed. Decrees will be entered in this court in favor of Mrs. Seward and against J. F. Garner for $20 and $153.95, and interest from April 2, 1934, to the present. The latter decree is declared a lien on the crop attached, and in lieu thereof on the $100 paid into court. The cost of the cause, including the cost of the appeal, is decreed against appellants. The cause is remanded to the chancery court of Williamson county for the application of the $100 to the payment of the decree and for the collection of the remainder on the decree.

Faw, P. J., and DeWitt, J., concur.