PHIFER v. MUTUAL BEN. HEALTH & ACCIDENT ASS'N.—148 S. W. (2d) 17.

Middle Section.   July 27, 1940.

Petition for Certiorari denied by Supreme Court.   January 14, 1941.

602

S. G. Butler, of Sparta, and Albert Williams, of Nashville, for appellee Joe S. Phifer.

Camp & Camp, of Sparta, and Sizer, Chambliss & Kefauver, of Chattanooga, for appellant Insurance Co.

JOSEPH HIGGINS, S. J. We shall refer to the parties as complainant and defendant just as they appeared in the lower Court.

This was a bill filed by complainant to recover some installments claimed by him to be due from defendant upon a health benefit certificate issued by defendant to him on the 25th day of May, 1937—this bill being filed on the 26th day of May, 1938.

Complainant alleged the payment of premiums and reproduced the obligatory provision of the policy with respect to the payment of monthly benefits, and alleged that on the 9th of August, 1937,

he had become disabled on account of sickness and took his bed on August 22, 1937, and had been confined to his bed ever since; that he had been examined by reputable physicians who pronounced him suffering from liver and gall bladder trouble.

Complainant further averred that he had given defendant notice of his illness and had reported his illness to the defendant on blanks furnished by it; that in response to this notice and presentation of his claim defendant denied liability and undertook to refund premiums, and declared its intention of cancelling the policy. That notwithstanding this effort at cancellation, complainant continued to pay his premiums, which had been received by defendant, and that defendant had repeatedly refused to consider his application and has repeatedly made an effort to cancel the policy and return the premiums to complainant.

Complainant filed his original policy as an exhibit A and alleged that it was a valid and enforceable contract, and that he had complied with its provisions and that he was entitled to go into Court and require defendant to comply with its provisions.

Complainant further alleged that it seemed apparent that his disability was or probably would become permanent; that he had been advised that he was entitled to a judgment for the benefits provided in the policy—being for $20 for the first fifteen days of his illness, and at the rate of $80 per month since that time, and that he was entitled to keep the policy in force by the payment of his quarterly premiums.

He prayed that at the hearing the policy held by him be declared to be a valid and binding contract and enforceable under the laws of Tennessee; and he prayed for judgment for the sum of $20 and for $80 per month after and since the expiration of the first fifteen days after his illness began.

There was a demand for a jury.

The pertinent paragraph of the policy quoted by complainant is in this language: "The Association will pay for one day or more at the rate of $40 per month for the first fifteen days, and at the rate of $80 per month thereafter, for disability resulting from disease the cause of which originates more than thirty days after the effective date of this policy, and which confines the insured continuously within doors, and requires regular visits therein by legally qualified physicians; provided said disease necessitates total disability and total loss of time."

Defendant admitted issuing the policy and that the exhibit filed with the bill was the original, but defendant denied that the premiums had been paid as alleged.

Defendant denied the allegations in the second paragraph of the bill wherein complainant had alleged that he had become sick and had been attended by two physicians, and that he had had the com-

plaint therein alleged, and that he had been confined to his bed continuously since the date given.

Defendant denied that complainant had become disabled within the provisions of the policy, for the reason that any disability from which complainant was suffering had originated before the effective date of the policy, and that defendant was not liable.

Defendant admitted the complainant had written for forms and that a proof of claim had been received by defendant, but denied that complainant was entitled to relief thereon.

There was a denial of sections four and five of the bill wherein complainant had alleged that his contract was a valid and binding one, and that he had become disabled and was entitled to the benefits, and that defendant was indebted to him in any amount because of disability.

Defendant, proceeding further, alleged that complainant in making application in writing for the policy which was attached as Exhibit A had answered certain questions; that the policy had been issued in reliance upon the answers inserted in said application; that in said application inquiry was made as to whether complainant was in good health and he answered the question, ''yes.'' He was further asked if he had ever had other named diseases, which he denied.

Defendant alleged that complainant was not in good health at the time of the making of the application—that he was at that time suffering from a liver disease, and possibly cancer and stomach trouble, and that he had suffered from bronchitis, dysentery and fever. And defendant further alleged that complainant had warranted that he did not use intoxicating liquors to excess, and that this was not true; and that said representations of complainant were material and affected the risk, and were made with intent to deceive; and defendant repeated its contention of non-liability, and defendant repeated its averment that the policy was not effective unless complainant was in good health.

It was further alleged that complainant made application for disability payments to the Lincoln National Life Insurance Company on the day of the delivery of the policy here sued on.

It appears in the bill of exceptions that before the Chancellor entered upon the hearing of the cause, the following stipulation was entered into: ''It is stipulated and agreed that the jury in this case be waived, and it is agreed that said case be tried before the Chancellor sitting as a jury.'' The Chancellor did try the case upon oral and documentary evidence as shown by his decree—which decree embraces this recital, ''A jury having been demanded in the pleadings but by consent of the' parties the jury was waived and the cause was tried before the Chancellor sitting as a jury.''

The Chancellor decreed in substance that the allegations of complainant's bill had been sustained by the proof, and that complain-

ant was entitled to the relief sought. He further decreed that the policy was a binding and subsisting contract of insurance; that at the time of the filing of the original bill defendant was indebted to complainant in the sum of $779.50, and that since that time there had accrued under said policy an additional indebtedness of $1,360 and interest, for which a decree for the $2,220 was entered.

The concluding part of the decree is in this language, "For the present this case is retained in court for the disposition of any matters arising out of the obligations assumed under the terms of the insurance policy made the basis of this suit."

Defendant in due season made its motion for a new trial, which was in substance that there was no evidence to support the judgment, and that the judgment was contrary to the law and the evidence; that the Court committed error in allowing complainant to introduce evidence to the effect that complainant had and has tachycardia, a heart disease, when defendant had been given no notice of such complaint; that the judgment was rendered on speculation and conjecture, and that the Court was in error in refusing to hold the policy invalid because of complainant's misrepresentations in his application; that the Court was in error in entering a declaratory judgment because the facts were controverted and no declaratory judgment can be made in such case; and that the Court was in error in decreeing that the cause be retained in Court for the disposition of any obligation that may arise under the terms of the contract of insurance during the present disability of complainant; and that the Court was in error in refusing defendant's motion to continue the cause; and finally the Court erred in rendering judgment for $2,220, for the reason that this amount was in excess of the amount due at the time the action was brought. This motion was overruled.

An interesting question of practice must be disposed of in limine for the reason that the conclusion at which we arrived respecting this point will have vital relation to practically all the questions submitted in the brief of counsel for defendant. That question is whether this Court as a reviewing and revising tribunal shall treat the decree of the Chancellor with respect to the facts as the findings of a jury, or whether the pronouncement of a judge hearing the cause on oral testimony. For if the first of the alternative propositions be accepted as our guide, we are relieved of the obligation of rendering any specific findings as to the facts. If the latter rule prevails, we must then weigh the evidence and determine on which side the preponderance of the evidence lies.

This question of practice arose some year or two ago in the case of Ragland-Potter & Co. v. Brierhill Collieries, and was ably discussed from every angle by Judge Felts in an unpublished opinion. In that decision the learned Judge construed Section 10622 of the

Code in which is embraced the provision allowing appellate courts in Tennessee to re-examine an appealed case when there is an assignment that the evidence preponderates against the judgment of the judge trying the cause. Judge Felts likewise analyzed the published opinions bearing upon the subject particularly—Toomey v. Atyoe, 95 Tenn., 373, 32 S. W., 254; Beatty v. Schenck, 127 Tenn., 63, 152 S. W., 1033; Choate v. Sewell, 142 Tenn., 487, 221 S. W., 190; Pearson v. Mutual Life Insurance Co. of New York, 17 Tenn. App., 503, 68 S. W. (2d), 963.

■ An endeavor was made by the authors of the last edition of Gibson's Suits in Chancery, to make plain the distinction between cases wherein a demand for a jury had been withdrawn and those wherein there was a stipulation that the Chancellor heard the case sitting as a jury. In section 548e, subsection 2, the following language will be found. We repeat the full statement, in substance, which is, that if a party demands a jury and withdraws that demand with the consent of his adversary, the hearing will not be as if by jury; that whenever there has been a demand for a jury the cause is converted into a jury case and that the waiver of trial by jury followed by an agreement to submit the issues to the Chancellor without more will suffice to restore the case to a non-jury docket; but if such withdrawal term or equivalent term be not used, or if it be agreed that the Chancellor shall sit as a jury, then a motion for a new trial is necessary as in jury cases.

■ Our conclusion is that we are constrained to treat the decree of the Chancellor as the pronouncement of the jury upon all disputed questions of fact, and that with respect to any controverted matter we shall be controlled by our ascertainment of the inquiry as to whether these findings of fact are supported by material evidence.

We proceed now to dispose of the assignments of error by brief treatment.

■ In the first assignment of error defendant insists that there was no evidence to support the judgment of the Court. Our response is that the record discloses much lay testimony and substantial expert evidence tending to show that complainant was in reasonably good health at the time the policy was issued and that he became ill early in August, and by August 22, 1937, was totally disabled by illness such as confined him to his room. Complainant and his wife and some neighbors testified that he was apparently in good health and was able to do heavy physical work for sometime after issuance of the policy and before the illness was contracted. His two physicians say that he was sick and had some liver trouble or some complications such as required confinement, and that he was wholly unable to carry on his vocation. That he had made application to another Insurance Company for sick benefits, and that he was really ill before the policy was issued, or that he was suffering from

diseases which had not arisen more than thirty days after the issuance of the policy, were all questions of fact resolved by the Chancellor against defendant. We find that these conclusions of the Chancellor are supported by some material and credible evidence, supplemented, as we stated, by the opinions of physicians.

■ We pass over without special treatment assignment number two, to the effect that the decree of the Chancellor was contrary to the law and the evidence. This is not the prescribed way of challenging the correctness of a verdict.

It is complained in the third specification that the Court committed error in allowing complainant to introduce evidence to the effect that complainant was suffering from tachycardia—there being no mention of it in the pleadings.

■ Learned counsel for appellant, defendant here, overlooked one of the rules of this Court, to the effect that the language or the full substance of any testimony excepted to must be embraced in an assignment of error predicated upon the action of the Court in allowing alleged incompetent evidence to be introduced.

■ But passing the matter of form by and viewing the question as if presented, and bearing in mind that notwithstanding our fictional assumption that a jury was present, and bearing in mind that the cause was being tried by a learned and experienced Chancellor, we are of the opinion that any error that may have been committed was of so slight consequence as not to be material and prejudicial. It will be observed that the term tachycardia was explained by the expert physician as a "rapid heart," and that it might be an incident to the liver trouble. It is further to be noted that this expression came rather late in the trial and that it passed the lips of the witness for the time being without objection, and was at a much later stage brought to light and emphasized as an error. The learned Chancellor did not predicate his decree upon, nor did he undertake to find that complainant had any such ailment. Hence, the Court must have disregarded this evidence, or at least he did not deem it of such weight as to predicate his decree thereon.

In the fourth assignment it is said that the Court was in error in grounding his decree upon speculation and conjecture. We are unable to see the basis of this contention. As we have stated, there was evidence that complainant was apparently well at the time the policy was issued and that he subsequently became ill to such an extent that he was totally disabled. Some of the witnesses detailed physical acts or performances which the doctors say a party suffering from the imputed ills could not have performed or withstood. Again, many neighbors testified that complainant was apparently well and active. It is an inference from the testimony of one of the doctors that the illness from which complainant was suffering had its

origin shortly before the time he (the physician) was called. These facts are sufficient basis upon which to found and adjudicate liability.

It is complained in the fifth assignment that the Chancellor was in error in refusing to decree that the policy was invalid because of the misrepresentations in answers to questions made in his application. It is said in this connection that among other things that complainant was questioned as to whether any application for insurance made by him had been rejected. We are constrained to overrule this assignment for the reason that the Chancellor was warranted in disregarding (as we assume he did) the offerings of evidence upon this point, for the reason that the testimony submitted did not show any application for a substantial nature made by complainant that was rejected.

Before taking up the subsequent assignment we recur to the chief contention of learned counsel for appellant, that the evidence showed conclusively that complainant was an habitual user of intoxicating liquors and that this was one of the originating causes of his illness. This seems not to have been specifically stated in an assignment of error, but it may be deemed to have been embraced in the specification challenging the sufficiency of the evidence to support the decree. We shall dispose of this matter by stating that it was a vital fact—both with respect to the extent of the use of intoxicants, and the effect of those intoxicants upon the bodily health of complainant. The Chancellor evidently found that he was not intemperate, and that his use of intoxicants did not materially contribute to his ailment. Emphasis is placed upon the fact that complainant admitted that he had for years consumed about four gallons of intoxicants per year. Reduced to smaller quantities, it was shown that complainant was a user of about one and one-quarter quarts of liquor per month. We do not think that it can be ruled as a matter of law that a man who consumed this quantity of stimulants per month is intemperate, or that it would materially affect his health. We feel constrained to yield to the finding of the Chancellor that weight to which it is entitled as a pronouncement of a body called upon to weigh evidence—a functionary who is called upon to weigh the evidence and the facts and whose findings must be upheld if there is any material evidence supporting these conclusions of fact.

Complaint is made in the sixth assignment of error that the Court was in error in pronouncing a declaratory judgment because the facts were controverted. The decree of the Chancellor is not technically of the declaratory judgment nature. He merely held as a condition precedent to the awarding of a recovery that the policy issued to complainant was a valid, subsisting contract. This was a pronouncement that would have followed with or without any prayer for a declaratory judgment. There is nothing in the decree

that will be binding on the parties in the future other than that complainant committed no fraud in the procurement of the policy, and that he had become disabled and was confined to his bed, and was entitled to the disability payments provided by the policy. We agree with the learned counsel for appellant that there cannot be rendered such a declaratory judgment upon a disability policy as will foreclose the right to disability growing out of future and contingent findings. It is manifest that complainant will be entitled to the monthly benefits only during and for the length of time that he is totally disabled and confined to his bed, and that if he should recover or not be disabled to the extent provided in the policy, his right to installments shall cease, for the condition of the obligation to pay is the continued disability of the policy-holder. Aetna Life Insurance Co. v. Haworth, 300 U. S., 227, 57 S. Ct., 461, 81 L. Ed., 617, 108 A. L. R., 1005.

Complaint is made in the seventh assignment that the Court was in error in retaining the cause on the docket for future disposition of obligations that may arise under the terms of the contract of insurance during the present disability of complainant. We intend to treat this assignment in connection with that of number nine, wherein complaint is made that the Chancellor allowed a recovery for the monthly benefits accruing subsequently to the filing of the bill.

It is urged finally by appellant that the Chancellor was in error in augmenting the recovery of complainant by adding thereto of monthly benefits or installments that had accrued from the day of the bringing of the suit to the day of rendition of judgment. We are persuaded that this position is well taken and that the consequences to complainant are inescapable.

We have stated and we repeat that we cannot conceive of any basis upon which the case can or ought to be retained in the lower court for future orders. The decree must be construed as relating to conditions obtaining upon the day of the filing of the original bill. There is nothing of peculiarly equitable cognizance involved in this case. Every issue and every defense raised could have been presented and made available in a suit at law. Hence, the absence of any basis upon which the cause can or should be retained in the lower court for future orders. The complainant had and has a right of action for each and every installment maturing after the day of the bringing of his action; and this is true as respects the entire life of the policy. There is no principle upon which complainant can rely that with respect to future installments the decree in his favor is res judicata. We observe, however, that the decree, if and when the appellate courts affirm that the policy was a valid and binding contract, and that complainant committed no fraud in procuring it, and that he did not breach any of the

warranties impressed therein, is or will become conclusive; and that with respect to future demands by him for accruing installments appellee cannot again raise the questions of fraud, misrepresentation or breach of warranty. But this is the utmost extent to which the doctrine of res judicata may be carried. The decree of the Chancellor awarding complainant $779.50, estimated to be the total of the accumulated installments, will be affirmed, together with a decree for costs incurred in the lower Court; but with regard to the installments accruing between the commencement of the action and the entering of the decree complainant is met with two fundamental and insuperable procedural barriers. One of these is that suits are to be tried with reference to and upon conditions obtaining at the time the action is commenced. ''The rights of the parties are to be determined as they were at the commencement of the action, unless some event happens subsequent which affects the matters in issue; and the court cannot consider such subsequent matter unless it is presented by a supplemental pleading.'' Bannon v. Jackson, 121 Tenn., 381, 117 S. W., 504, 508, 130 Am. St. Rep., 788, 17 Ann.. Cas., 77; Atkinson v. Railroad Employees Relief Society, 160 Tenn., 158, 22 S. W. (2d), 631. Another procedural rule is that the decree of the Court must conform to the pleadings and that to the extent that it exceeds the limits of the pleadings such decree is void. Gibson's Suits in Chancery, secs. 430, 680; Riddle v. Motley, 1 Lea, 468.

Learned counsel for complainant overlooked the necessity of filing an amended and supplemental bill embracing the installments or monthly benefits that had become due between the date of the filing of the bill and the date of the decree. In the case of Atkinson v. Railroad Employees Relief Society, supra, the Supreme Court dealt with this exact question. It appeared in that case that complainant was unquestionably entitled to benefits which had matured between the date of the commencement of his action and the pronouncement of the decree, but he was denied a recovery thereon for the reason that he had not availed himself of the right to file an amended and supplemental bill setting forth the maturity of those installments and his right to a recovery therefor. This complainant with respect to these installments is left free to institute a new action.

The costs of the appeal will be equally divided between the parties and a decree to that effect will be drawn.

Crownover and Felts, JJ., concur.